

U.S. Department of Justice

United States Attorney
Eastern District of New York

RCH/FJN
F. #2016R01214

271 Cadman Plaza East
Brooklyn, New York 11201

November 29, 2021

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Asre, et al.
Criminal Dkt. No. 21-174 (DG)

Dear Judge Gujarati:

The government respectfully submits this supplemental letter brief regarding the Stipulation and Addendum to Protective Order (the "Protective Order Addendum") (Dkt. No. 35). As set forth in more detail below, the government requests that the Court enter the Protective Order Addendum to ensure that the government can comply with its discovery obligations under the narrow and specific circumstances presented in this matter by disclosing material related to reports filed with the U.S. Department of the Treasury pursuant to the Bank Secrecy Act, 31 U.S.C. § 5311, et seq (the "BSA"), while also maintaining the confidentiality that such material should be accorded under the law.[1]

I. Background and Proposed Protective Order Addendum

Both defendants in this matter are charged with one count of operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960. In addition, Gyanendra Asre is charged with one count of failing to maintain an Anti-Money Laundering Program, in violation of 31 U.S.C. §§ 5318, 5322(a), and 5322(b); one count of failing to maintain an effective Anti-Money Laundering Program, in violation of 31 U.S.C. §§ 5318, 5322(a), and 5322(b); and, most notably for the purposes of the Protective Order Addendum,

---

[1] Because this letter provides information regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the government seeks to submit this letter under seal and ex parte. The government proposes to file a redacted copy on the public docket.

five counts of failure to file Reports of Suspicious Transactions, in violation of 31 U.S.C. §§ 5318, 5322(a), and 5322(b).

On June 16, 2021, the Court entered protective orders pursuant to Federal Rule of Criminal Procedure 16(d)(1) (the "Protective Orders") governing discovery in this matter. See Dkt. Nos. 25, 26. Pursuant to the Protective Orders, the government, to date, has produced over 578,410 documents constituting over 4.2 million pages of materials.

During the course of its preparation of discovery materials, the government identified a small subset of material related to Suspicious Activity Reports ("SARs") that should be disclosed to the defense so the government can "fulfill [its] official duties" under Federal Rule of Criminal Procedure 16 in the specific and limited circumstances of this case where willful failure to file SARs has been charged. 18 U.S.C. § 5318(g)(2)(A)(ii). However, given the sensitive nature of these materials and their protected status, the government must balance its obligation to keep these materials confidential with its discovery obligations. The procedures and protections set forth in the Protective Order Addendum appropriately strike that balance.

II. Legal Standard

This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause. See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Stewart, 590 F.3d 93, 98-99 (2d Cir. 2009) (citing Fed. R. Crim. P. 16(d)); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect").

Under the Bank Secrecy Act, financial institutions must report suspicious activity to the U.S. Department of the Treasury. See U.S.C. § 5318(g)(1); 31 C.F.R. §§ 1020.320, 1022.320. The disclosure of the existence of a SAR or any information that would reveal the existence of a SAR is ordinarily prohibited by law and subject to criminal and civil penalties, unless, for example, such disclosure by a government official is necessary to fulfill its official duties. See 31 U.S.C. § 5318(g)(2); 31 C.F.R. §§ 1020.320(e), 1022.320(d). The unauthorized disclosure of a SAR or information that would reveal the existence of a SAR could jeopardize the security of the U.S. financial system, threaten the safety of those who file SARs, and compromise national security. See Financial Crime Enforcement Network Guidance, Unauthorized Disclosure of Suspicious Activity Reports, available at https://www.fincen.gov/sites/default/files/guidance/unauthorizeddisclosureofbanksar.pdf.

The prohibition against the disclosure of SARs applies to the government, which may only disclose SARs or information that reveals the existence of a SAR "as

necessary to fulfill [its] official duties." See 31 U.S.C. § 5318(g)(2)(A)(ii), 31 C.F.R. §§ 1020.320(e)(2), 1022.320(d)(2). As a result, SARs and information that would reveal the existence of a SAR are not discoverable. See, e.g., United States v. Holihan, 248 F. Supp. 2d 179, 186-187 (W.D.N.Y. 2003) (holding, in response to bank's motion to quash defendant's subpoena duces tecum, that the BSA and its implementing regulations "create an unqualified discovery and evidentiary privilege that cannot be waived"); Weil v. Long Island Savings Bank, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001) (holding that disclosure of SARs or their content is prohibited).

However, business records giving rise to the SAR are discoverable so long as those records do not reveal the existence or content of a SAR. See, e.g., Cotton v. PrivateBank and Trust Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) (describing two categories of SAR supporting documents, "factual documents giving rise to suspicious conduct" that are produced in the ordinary course of discovery as business records and "documents representing drafts of SARS or other work product or privileged communications that relate to the SAR itself," which are "not to be produced because they would disclose whether a SAR has been prepared or filed"). To the extent SARs contain exculpatory or impeachment information, courts have found that the government should reduce the exculpatory or impeachment information to writing and produce that summary to the defendant rather than producing the SARs themselves. See United States v. Cadden, No. 14-10363, 2016 WL 10879574, at *2-3 (D. Mass. Jan. 8, 2016). In addition, at least one court has held that SARs are discoverable where their existence or content is material to the preparation of a defense. See United States v. Holihan, 236 F. Supp. 2d 255, 262 (W.D.N.Y. 2002) ("The court finds that the use of the SARs to impeach government witnesses will have a significant effect on the defense and, as thus, are material to the defense. The SARs are, therefore, discoverable." (internal citation omitted)). As discussed in more detail below, because the charges here include the willful failure to file SARS, the government believes that ████████████████████████████████████████

III. Good Cause Exists for the Entry of the Protective Order Addendum

The indictment charges Gyanendra Asre with failure to maintain appropriate Anti-Money Laundering Programs and failure to file SARs. Specifically, the indictment alleges that defendant Asre willfully failed to file any SARs related to transactions involving the NYSEFCU, the NYSEFCU-CUSO, and DDH Group between November 2014 and June 2016, even though those institutions processed suspicious transactions. ████████████████████████████████████████ The government submits that the Protective Order Addendum appropriately balances the government's obligation to maintain the confidentiality of this material and its discovery obligations.

3



For example, beginning in July 2016, after the National Credit Union Administration determined that the NYSEFCU had material deficiencies in its BSA/AML program, the NYSEFCU hired an independent audit firm to review its BSA/AML program. That auditor concluded that, among other things, the NYSEFCU had not established an effective BSA/AML compliance program commensurate with its inherent risks and designed to meet the requirements of the BSA; and that the selection of defendant Asre as Compliance Officer was inappropriate due to conflicts of interest.



The Protective Order Addendum is necessary to limit further disclosure of such confidential material. The Protective Order Addendum specifically provides that material produced to defendants pursuant to the Protective Order Addendum, which material would also be designated "Sensitive Discovery Material" under the Protective Order, may not be publicly disclosed, including in Court proceedings, without consent of the government

or order of the Court. This includes further public disclosure of material produced under the Protective Order Addendum even if that material is or becomes part of the public domain (including through a violation of the Protective Order) or public court records, including documents admitted in other trials. While the government is not aware of material it intends to produce pursuant to the Protective Order Addendum already in the public domain or part of a public court record, the government submits that this additional prohibition is required to maintain the required confidentiality of these materials, prevent further dissemination of protected materials produced by the government and to ensure that protected materials that have otherwise been disclosed publicly are not further disseminated without appropriate protections. Given that the government does not know the circumstances surrounding potential public disclosure of the protected material outside this matter, the Protective Order Addendum limits further public dissemination of protected material by the defense absent consent of the government or a court order.

The restrictions in the Protective Order Addendum appropriately permit the government to comply with its discovery obligations and produce certain BSA material that is typically not discoverable, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ while adhering to its obligation under the law to keep such material confidential.

IV. Conclusion

The government respectfully submits that the Court should enter the enclosed Stipulation and Addendum to Protective Order pursuant to Rule 16(d)(1) to ensure that protected BSA materials the government has determined that it should produce in discovery in the narrow and specific circumstances of this case otherwise remain confidential and protected, and that subsequent unauthorized disclosure of the protected materials does not occur. See 31 U.S.C. § 5318(g)(2); 31 C.F.R. §§ 1020.320(e), 1022.320(d).

For the foregoing reasons, the government respectfully requests that the Court enter the Stipulation and Addendum to Protective Order (Dkt. No. 35), which has been signed by counsel for Mr. Asre and the government.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Ryan C. Harris
Francisco J. Navarro
Assistant U.S. Attorneys
(718) 254-7000

DEBORAH L. CONNOR
Chief, Money Laundering and
Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Margaret A. Moeser
Margaret Leigh Kessler
Trial Attorneys
(202) 598-2345
(202) 307-0616

cc: All Counsel (via ECF)